We'll move to our next case. Keila Rosa Camarena and Javier Barrios v. Immigration and Customs Enforcement. Mark Andrew Prada is here for the appellant. Mary Pilaracos is here for the Department of Justice Attorney for the Appellees. And Mr. Prada, are you ready to begin with your argument? Mark Prada Yes, Your Honor. May it please the Court. My name is Mark Prada. I'm here on behalf of the appellant. The Rhinos-Advitis dichotomy demonstrates that there is a difference between an exercise of discretion and the authority to exercise that discretion. One challenges an exercise of discretion when they argue that an agency made the wrong decision, where one is arguing that the manner in which the discretion was exercised was improper. In contrast, a challenge to the scope of discretion argues that the decision made was not authorized. That distinction is simple, readily administrable, and already the law. The Court has jurisdiction because the appellants bring the latter type of claim. They argue that the agency's enforcement discretion must yield while they pursue a process that the agency itself extended to them. The Accardi doctrine leads to this result, based on rule of law principles rooted in due process and structural concerns regarding delegations of authority. An application of these principles leads to another important distinction, the difference between the right to apply for a discretionary benefit and the right to a grant of that discretionary benefit itself. This Court explained in Mayors v. INS that this distinction should not be muddied by the fact that the ultimate decision is a matter of grace, rather than of right. As such, the appellants ask the Court to recognize their right to apply and pursue the provisional waiver process, and hold that ICE may not remove a person whose provisional waiver process is already pending. I welcome the Court's questions. Is your argument based at all on habeas arguments, or are you relying more on your administrative law? We use habeas and the APA for the cause of action to bring the case forward. You're not making any suspension clause arguments or anything like that? No, we're not. I'm aware of other cases where the courts have held that the statutory bars apply, and then suspension clause arguments were made, but we haven't pressed any of those showing that those are channeling provisions. They don't necessarily bar claims outright. For example, the Third Circuit recently held in the EOHC case, which is cited in our papers, that these channeling provisions apply to issues or claims which can be meaningfully reviewed in a petition for review process. One of our arguments is that the provisional waiver's right to apply, an immigration judge has no jurisdiction to decide that or to make any cases. So the government has claimed that we can simply motion to reopen the court, but even the BIA's precedent doesn't allow that. You cannot reopen an immigration order in an immigration court to seek relief before a different agency, USCIS. So the claim that we can reopen the deportation order to apply for what, we don't even know. The government has not explained what it was that we would seek in an immigration court, but there is relief there. Don't you think the government points us to language in the federal register for the 2013 rule that specifically says the filing or approval of a provisional unlawful presence waiver application will not protect an alien from being placed in removal proceedings or moved from the United States. Why shouldn't we find that persuasive here? Well, first, we believe that the agency cannot dictate whether a cause of action is cognizable in a federal court. That's the sort of thing that only Congress can do to determine whether causes of action exist or not. And we're arguing that under a CARTI, there's a principle that when a process is created, that the creation of a process leads to the creation of a right. Further, the waiver application and the language in the federal register is speaking about authorized stays. That's not about whether a court can stay removal. An authorized stay is often used, for example, if a person enters on a tourist visa and they're allowed to be here for six months. That's the period of the authorized stay. And the purpose of these waivers are, one, to waive unlawful presence that has been accumulated. So one of the purposes of the regulations is that filing the waiver application does not toll the accumulation of this unlawful presence. I believe it was a district court in the Southern District of New York that explained that. And the federal register notice, it's demonstrative of regulatory intent. But at the end of the day, it's the text of the regulation that controls. Assuming that even if the agency could pass regulations that limit a court's jurisdiction or can define causes of action, the text of the regulation does not do that. Well, what about the text of the statute that says that, you know, the text of the statute, I think, has been argued pretty clearly says that we don't have jurisdiction to consider these pushes against removal. Why isn't that established what Congress set out as a cause of action or not? Well, Your Honor, I believe you're referencing 1252G, the Reno provision. So if we were to do a clean reading of that statute with no case law behind it, it could be a plausible argument that is very broad language. But the Supreme Court in Reno and Cedvitas, applying presumptions in favor of judicial review has narrowed the scope of those provisions. So in the Reno case, the Supreme Court said that this was about shielding discretionary determinations, the individualized determinations with respect to an individual person, the weighing of factors to come to a where a person was challenging their detention. And the purpose of that detention was to execute removal. The court held that even then, even though there was that connection that a challenge to a detention did relate to a decision to execute removal, it held that the courts are permitted to review legal constraints on that power. So we're not asking the court to rule that there was an abuse of discretion by the agency. We're arguing that because of a CARTI, because the creation of a right of a process leads to the creation of a right to pursue the process, that once that proceeding has commenced to pursue these waivers, that ICE cannot simply interrupt it. It would be a different story had ICE pursued removal and then a person begins a provisional waiver process after. But that's not the case with our with our clients here. Why do you think that difference in because in the CARTI case, the Supreme Court is explaining that when a discretion is delegated to an agency, either by Congress or the secretary to a sub agency himself, that that creates a right to apply. But it's also it's structural. This is delegation doctrine in the in the administrative law context. So for ICE to interfere and to deport while USCIS is a jurisdiction has been invoked, is impending an adjudication, ICE is effectively sidestepping the USCIS decision. So is ICE really interfering or is it just carrying out its process that it already that it already went through according to the lawful procedures? I think there's two reasons why that are crucial to why ICE is interfering. One, you cannot pursue a provisional waiver process from outside of the United States. That's a condition precedent to be able to pursue this process. And two, the purpose of the rule is to limit and prevent family separation as much as possible. So the act of ICE removing somebody while this procedure is pending is directly contrary to the intent and the purpose of the regulation. With respect to the Accardi doctrine, I think really, the merits issue is that we have two types of discretion that are in conflict with each other, right? There's the enforcement discretion that the agency has at all times, which 1252g seeks to protect. But there's also the benefits dispensing discretion. And the immigration law has two main purposes. One is protect family unity and at the same time to enforce and to remove undesirable persons. Nothing about our clients demonstrates that they're not eligible for a provisional waiver process. They fit within it. In fact, they've been advancing in their process. For example, Mr. Barrios, he was just granted an IT-12 application while this appeal was pending, even though ICE sought to deport him prior to him having that decision. So it shows that ICE and USCIS, they can have different goals. So USCIS might believe that someone has a good case and they're willing to grant. But if ICE interferes and tries to execute a removal before that decision, it undermines the goals of USCIS and what their decisions would have been. And I think what occurred in Mr. Barrios case demonstrates that conflict. He has been granted, his petition was granted, showing that his wife and him have a true relationship. They found that he merited discretion to waive the consequences of the deportation order the moment he seeks to depart, which also gets to the point of your earlier question, Judge Grant, about 1252G. We're not seeking to invalidate a removal order. The whole purpose of this process is to execute these orders in an orderly fashion that would promote family unity. And are you seeking to stand in the way of a valid removal order? We're arguing that once the process in place, the ICE's discretion is limited because agencies can limit their own discretion by issuing rules. So even though discretion is unfettered in the statute and at the outset, the moment an agency places rules on itself, that serves to limit discretion. So it's not that we are seeking to limit the agency. It's that the agency has done it to itself already. Can an agency rule really override 1252G, which says no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien? We're not arguing that the rule overrides 1252G, but that the rule takes the agency action outside of the scope of 1252G. So 1252G reaches discretionary decisions. It does not reach non-discretionary decisions. So this court recently in the Patel case on Bonk was discussing with a different statute provision of how the court used to treat these things differently. But under Supreme Court precedent, this distinction between discretionary and non-discretionary decisions is the law. And our argument is that because of the regulations, they turn what was a discretionary decision into something non-discretionary. The court has no further questions that I can reserve for rebuttal. All right. Thank you, Mr. Prata. We'll hear from Ms. Florey-Kurse. You're on mute. You're going to have to unmute your... There you go. Thank you, Your Honor. May it please the court, my name is Mary Lariker, appearing on behalf of the United States. This court should affirm the district court's decisions in both Camarena and Barrios for two reasons. First, Section 1252G plainly bars plaintiff's claim. And second, no body of law confers the right for plaintiffs to remain in the United States despite their legal, valid, final orders of removal. So first, Section 1252G bars the district court from hearing claims arising from the decision to execute a removal order. Importantly, it bars any cause or action. That includes constitutional actions, that includes the way plaintiffs have characterized their claim as a challenge to the scope of ICE's discretion. It claims it covers any cause or action arising from the decision to execute plaintiff's final orders of removal. As for the second part of... Ms. Lariker, what do we do with the courts that have carved out the exceptions to that language in 1252G? Exceptions that seem to fit in the jurisdictional bar, but we're told do not actually fit, for example, the Maydia case. Well, Your Honor, I'm not sure exactly which court you're referring to. If you're referring to the courts that have come to an opposite decision and these specific types of cases in the provisional waiver cases, other district courts, then first and foremost, the United States government disagrees with the outcome of those decisions because of the text of the statute, because of Reno v. AADC. With regard to other courts that Your Honor believes have carved out exceptions, Your Honor, they're not exceptions to 1252G. They just simply don't fall. Those in Reno, the Supreme Court did say that section 1252G is limited to three discrete decisions to adjudicate cases, to execute removal orders, and to commit proceedings. So section 1252G is limited to three discrete actions, but it's clear that one of those actions is present here. Plaintiffs admit that but for ICE attempting to execute their removal orders, there would be no case here. So the cause, the claim here clearly arises from ICE's decision to execute a removal order. And as to whether the constitutional action, the Accardi doctrine claim falls within section 1252G, it also clearly does because section 1252G by its plain language says any cause or claim. And as the Supreme Court has recognized, and I think even as this Court has recognized, that modifier any is sufficiently broad. How do you reconcile that with our MADU case? So in MADU, section 1252G simply did not apply because in order for that part of section 1252G to apply a challenge to executing a removal order, there must be a removal order. Section 1252G simply cannot apply when there's no removal order in existence to challenge the execution of. So in MADU, he was challenging whether the removal order itself existed. And without the existence of the removal order, section 1252G's prohibition on challenging decision to execute a removal order simply cannot apply. So it's just a simple plain language argument there, Your Honor. Here, there is no dispute that the final orders of removal here exist and that they are valid and executable. And it's clear, as I said, that this action certainly arises from ICE's decision to execute a removal order because but for ICE's actions here to try to execute that removal order, then there simply would be no case. Plaintiffs try, their entire argument seems to say that all they have to do is bring a colorable constitutional claim or colorable action in order to get around section 1252G. But not only would that undermine the plain purpose of section 1252G and the language that says any cause or claim, but it's barred by the Supreme Court's decision in AAVC. In AAVC, the Supreme Court was looking at a constitutional claim. It was determining whether section 1252G applied to plaintiff's constitutional claim against ICE's decision to execute, I mean to commence proceedings. So even in AAVC, it was a constitutional claim. And in AAVC, the Supreme Court held that section 1252G barred that constitutional claim just as it would bar any other claim arising from a decision to execute a removal order because that's what the statute says. It says any cause or claim. So this distinction that plaintiff is setting up is a faux one. It simply doesn't exist. Plaintiffs also- Does it matter that as opposing counsel suggested, there may not be another way for his clients to bring these claims? No, Your Honor, especially with regard to the section 1252G claim. With regard to the 1252B9 claim and the A5 claim, the government would say that it matters more there because those are channeling provisions, not jurisdictional stripping provisions. But in that case, the government would still argue that 1252B9 and A5 do apply. It's just not as strong of an argument as section 1252G, which the district court did not address as much as A5 and B9. However, the section 1252G argument, the government believes, is a much clearer answer, is a much clearer statute and is an easier question for this court to answer because there is a cause or claim here that directly arises from the decision of ICE to execute a removal order. And plaintiffs can't simply get around the this is a challenge to the scope of ICE's discretion, that this is a cardidoctrine challenge, meaning a constitutional challenge. It doesn't matter the way in which plaintiffs characterize it. As this court has held, as the First Circuit has held, as many courts have held, you can't simply cloak a claim in constitutional garb and get around what Congress has clearly stated. Congress has clearly stated here that there shall be no jurisdiction in the district any court for any cause or claim arising from the decision to execute a removal order, and that's precisely what we have here. Plaintiffs also mentioned that in some ways Zabias assists their argument. But there, we go right back to what this court also held in Madu. In order for section 1252G to apply, there has to be an attack on one of those discrete actions. And in Zabias, there was no attack to one of those discrete actions. That's what the court held. The court held that this isn't an attack on ICE's discretion to execute a removal order. This is an attack on whether ICE can detain someone, not an attack on whether they can execute a removal order. In fact, in Zabias, that was the entire point, that ICE could not at that point in time execute their removal order. So in Zabias, they held that section 1252G simply did not apply, not because there was a limit on ICE's discretion, but rather section 1252G didn't apply because plaintiffs weren't challenging one of those three discrete actions. They were challenging their detention only and whether their detention only was lawful, not whether executing their removal order or commencing their or adjudicating their case or commencing removal proceedings. Those discrete actions were lawful. Has the government made any arguments about whether habeas is an appropriate vehicle for this type of a claim? I know the Supreme Court this summer in a case that I'm short of pronounced, but we won't remember that pronunciation for long, hopefully. They've made some statements about the historical nature of habeas. Have you all made any arguments about whether habeas is an appropriate vehicle for this type of a claim? So not in this case, Your Honor, because it would be plaintiff's burden to bring up a suspension clause claim and they haven't done so here. But yes, Your Honor, if plaintiffs had raised a suspension clause argument here, we would argue first and foremost that this is not a habeas case because habeas cases seek release from custody, not a state of removal. And a state of removal is not a traditional remedy that is available on a habeas and therefore this is simply not a habeas action. But again, the government has not responded with those arguments because plaintiffs concede that suspension clause does not apply here. So the dichotomy that plaintiffs are setting up is a faux one. The statute clearly says any cause or claim that includes plaintiff's constitutional claim and includes plaintiff's a party doctrine-based claim and includes... You're not reading the entire sentence there. No court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision. And this is the language to execute removal orders against any alien. And, you know, Barrios and Camarena are making the argument that they're not challenging the execution of a removal order. That's not what we have here. You got to read the whole, you got to read the whole, the entire sentence, the entire statute. Yes, Your Honor, and that's the second half of the government's argument. That plaintiff's claim is just merely a... They're just merely trying to characterize and quote their claim in constitutional garb in order to get around that caution. It's very clear that this claim arises from the decision of ICE to execute a removal order because but for ICE attempting to execute that removal order, this case simply wouldn't exist. And it's clear that despite their challenge that it's a challenge to ICE's discretion or a challenge to the scope of the ICE's discretion or a challenge to whether ICE can legally execute their removal order, that distinction doesn't matter because as Rina, as AADC held, just because it's a constitutional claim, just because it's a constitutional challenge to one of those three discrete actions, Section 1252G still applies. So it does bleed into the second part of that sentence. The government's argument is based on the entire statute, not just one part of it. But doesn't Jennings, doesn't the Jennings case suggest that we don't use a but-for test in determining whether a claim arises from the decision to execute a removal order? It's not the only, Your Honor, Jennings stands for the proposition that it's not the only test, but certainly that's not the only argument the government has here. It's not just that there wouldn't be a claim but-for ICE's attempt to execute a removal order here. It's clearly an attack on ICE's discretion to execute a removal order and plaintiffs themselves, you know, seemingly admit that in their argument. They're saying that the order matters. They're saying that, oh, if ICE would have executed their removal, tried to execute their removal order before they tried to pursue a provisional waiver, then that would matter. Your Honor, that's, they're essentially admitting that the reasons why ICE decides to execute a removal order matter in this case. So they essentially admitted that they're challenging discretionary decision of ICE. And I would like to briefly touch on the merit of plaintiffs, on the merit of plaintiffs' claims here, which is very straightforward. Plaintiffs rely on one singular case from the Supreme Court, Icardi. In Icardi, the Supreme Court held that ICE and that DHS can place restrictions on itself. And when it does, it has to follow those restrictions. And the government agrees with that. In Icardi, the text of the statute said that the Attorney General shall exercise discretion. It had mandatory language in the statute saying that the Attorney General shall exercise that discretion. And when the Attorney General failed to even look at the application, it violated that regulation. It violated that mandatory language. That is the reason why there was a constitutional issue in Icardi. That's the reason why the plaintiffs won in Icardi. Here we have the exact opposite. We have no mandatory language in the regulation. We have no language at all. Plaintiffs certainly do not point to any that shows that it limits ICE's discretion in any way, shape, or form. In fact, the comments to the regulation expressly discipline such a right. And in fact, it's in that statute's claimer is in the instructions to the I-601 waiver itself saying that it does protect an alien from being placed in removal proceedings or from being removed from the United States. So that's the clear distinction here. That's what the Supreme Court has held time and time again in legitimate expectation of entitlement cases. That there must be some sort of mandatory language. That legitimate claim of entitlement must come from somewhere. And in Icardi, it came from that mandatory shall language. Here, there is no mandatory language that places that cabinet discretion on ICE. And absent that, there is no right on the merits here either. None. Thank you. Thank you, Ms. LaRueckers. And Mr. Prado, you've reserved some time for rebuttal. Thank you, Your Honor. Judge Grant, you asked a question about the thoracogen case, and those have been issues that have been raised in the district courts in any of these cases that we petition. We cite to Jones v. Cunningham, a Supreme Court case, states that when you challenge the conditions of supervision, that's custody. When you're seeking relief from a condition of supervision. It hasn't been briefed here, and we will gladly brief it if the court requires us to, but the point is on the order of supervision itself, one of the first conditions is that an immigrant must surrender themselves to ICE when ICE is deciding to execute. That is the condition that we're challenging here, that because these processes are pending, that that condition may not be exercised at this time. So within the framework of Jones v. Cunningham, this is a custody challenge, and it does fit within the habeas jurisdiction. Additionally, thoracogen's holding makes sense that when you're seeking review of a credible fear determination, that you're not challenging custody, because had Mr. Thoracogen been successful in his case, he would not have been released, because a credible fear determination is interlocutory. So if an alien presents himself at the border, and he's subjected to expedited removal, border patrol enters an order of expedited removal, and you have the opportunity to seek credible fear, and this court has held cases in the reasonable fear context, which is very similar. So if you're successful and you show credible fear, you're just permitted to apply for asylum in detention. You're still subject to mandatory detention before an immigration judge, and your asylum case could end up being denied. So even if Thoracogen had been successful, he would have remained detained to apply for asylum before an immigration court in a detention center. So that's why Thoracogen is very limited to the scope of its facts. But to summarize our claim, the language in 1252G that the Supreme Court has found dispositive is the arising from language, not the any cause or claim language. And they have interpreted arising from narrowly in every case, from Reno to Cidvitis to Jennings to Pria. Additionally, our arguments are grounded in administrative law. And as explained in the briefs, in the case of a board of curators, University of Missouri, the Supreme Court held that the Accardi Doctrine would not be incorporated through the 14th Amendment. By doing so, they recognize that this is a right beyond the floor or the limits of the Fifth Amendment. And in Morton v. Ruiz, the Supreme Court held the rights of individuals when they're at stake, the agency must follow the rules, even when the procedure is more rigorous than otherwise required. And our argument is that the agency has bound its discretion and it cannot sidestep that binding. Thank you, Your Honors. If Judge Wilson will permit me, I've got one more question for you. Let's suppose that you're correct and we do have jurisdiction. Where in the statute, where in the provisional waiver process is a right to remain until that process is completed, granted to the petitioner? So the claim is that there's a right to a decision on the process. And the fact that the process was in the United States, the only way to make that right effective is to forbid removal. So it's not that the regulations create a right to stay. It's that in order to make the rights under the regulations effective, we need a court to step in and enter a stay. Thank you. Thank you. All right. Thank you, counsel. Thank you.